UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN HARMON JOHNSTON,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security<br><br>Defendant. | No. 2:17-cv-331-EFB<br><br><br><br>MEMORANDUM AND ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB") under Titles II of the Social Security Act. The parties have filed cross-motions for summary judgment. ECF Nos. 19 & 20. For the reasons discussed below, plaintiff's motion for summary judgment is denied and the Commissioner's motion is granted.

## BACKGROUND

A.     Procedural History

Plaintiff filed an application for a period of disability and DIB on August 6, 2013, alleging that he had been disabled since May 19, 2012. Administrative Record ("AR") at 185-191. His application was denied initially and upon reconsideration. *Id.* at 107-110, 112-116. On May 5, 2015, a hearing was held before administrative law judge ("ALJ") Mark C. Ramsey. *Id.* at 41-80.

1

Plaintiff was represented by counsel at the hearing, at which he and a vocational expert testified. *Id.* At this hearing plaintiff amended his alleged onset date to December 27, 2013. *Id.* at 50.

On July 21, 2015, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i) and 223(d) of the Act.[1] *Id.* at 22-34. The ALJ made the following specific findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2013.

\* \* \*

/////

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

2

2. The claimant did not engage in substantial gainful activity during the period from his amended alleged onset date of December 27, 2013 through his date last insured of December 31, 2013 (20 CFR 404.1571 *et seq*.).

\* \* \*

3. Through the date last insured, the claimant had the following severe impairments: Low back injury with bulged discs and stenosis at L4-5 and L5-S1, PTSD, bipolar disorder, anxiety disorder, and dyslexia (20 CFR 404.1520(c)).

\* \* \*

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

\* \* \*

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except, mentally, he was able to perform simple, unskilled non-public work with only occasional public contact.

\* \* \*

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

\* \* \*

7. The claimant was born on [in] 1964 and was 49 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant number in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

\* \* \*

/////

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 27, 2013, the amended alleged onset date, through December 31, 2013 the date last insured (20 CFR 404.1520(g)).

*Id.* at 24-34.

Plaintiff's request for Appeals Council review was denied on December 13, 2016, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-7.

B.   Plaintiff's Relevant Medical History

From 2012 to 2014, plaintiff received mental health treatment from Drs. Russell Cottrell and James Chard. *E.g.*, *id.* at 341-42. He also received home visits from licensed social worker Bobby Walden. *Id.* at 346. Throughout 2013, plaintiff presented with various mental health issues. He reported being depressed in April 2013 after a concert he organized resulted in a financial loss. *Id.* at 426. In July 2013, he related a plan – which Dr. Chard viewed as unrealistic – to move to Hawaii and forage in the jungle if "things did not pan out." *Id.* at 406-07. In August 2013, plaintiff told Dr. Chard that he might have been sexually assaulted while he was in the Navy, but he was unsure whether these memories were real or not. *Id.* at 373.

On December 27, 2013 – the amended onset date – plaintiff reported having vivid thoughts of harming himself and others. *Id.* at 341-42. He was not on any psychotropic medication at this time. *Id.* at 341. Dr. Cottrell advised plaintiff to voluntarily hospitalize himself and plaintiff initially agreed. *Id.* at 342. A subsequent medical entry indicates, however, that plaintiff merely went to the hospital waiting room for approximately ten minutes before having his girlfriend take him home. *Id.* at 339.

State agency medical consultants reviewed plaintiff's records in December of 2013 and May of 2014. Dr. L. Colsky conducted the December review and found that treatment notes indicated that: (1) plaintiff was "doing well;" (2) he "want[ed] SSI because it would be more income for him;" (3) a few months earlier he was managing bands in his own business; and (4) plaintiff was capable of at least simple, routine tasks when compliant with medication. *Id.* at 88-90. Dr. Hillary Weiss conducted the May 2014 review by examining evidence prior to the date last insured. *Id.* at 99-100. Weiss noted that: (1) plaintiff's condition vacillated between

4

November and December of 2013; (2) he was smoking "copious amounts of cannabis" during the period which lead up to his December 2013 episode when he considered voluntary hospitalization; and (3) that plaintiff's conditions were severe, but under good control when he was compliant with his medications. *Id.* at 100.

## LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## ANALYSIS

Plaintiff argues that the ALJ erred by: (1) relying primarily on plaintiff's work activities that preceded the alleged onset date in order to find him not fully credible and (2) failing to provide adequate reasons for discrediting the opinions of his treating physicians.

/////

/////

/////

A. <u>Activities Preceding the Alleged Onset Date and Credibility Determination</u>

It was not error for the ALJ to consider medical evidence predating the alleged onset date. In *Carmickle v. Comm'r of Soc. Sec. Admin.*, the Ninth Circuit stated that "[m]edical opinions that predate the alleged onset of disability of limited relevance." 553 F.3d 1155, 1165 (9th Cir. 2008). *Carmickle* also recognized, however, that this principle was most applicable "where disability is allegedly caused by a discrete event." *Id.* In a subsequent, unpublished opinion, the circuit emphasized that *Carmickle* did not relieve the ALJ of his duty to consider all medical evidence. *See Williams v. Astrue*, 493 F. App'x 866, 868-69 (9th Cir. 2012) (finding the ALJ erred in ignoring medical opinions from up to six years prior to the plaintiff's alleged onset date); *see also Hubble v. Astrue*, 467 F. App'x 675, 677 (9th Cir. 2012) (finding that it was permissible for ALJ to conclude that a claimant's "ability to work with similar impairments in the past undermines [the claimant's] inability to work now.").

In his motion, plaintiff characterizes December 27, 2013 – the amended onset date – as an inflection point at which his "impairments and limitations . . . worsened significantly" and his psychiatrist recommended that plaintiff voluntarily hospitalize himself. ECF No. 19 at 16. Yet plaintiff's medical records make clear that he had continuously struggled, sometimes severely, with the same mental health issues that led him to consider hospitalization on December 27, 2013. On that day, plaintiff told Dr. Cottrell that he was hearing voices which urged him to attack others. AR at 341. Plaintiff had presented with similar symptoms in the months and years preceding his alleged onset date. *See id.* at 373 (treatment notes from 8/22/2013 indicating that plaintiff "reports daily" suicidal ideation); *id.* at 445 (treatment notes from 12/21/2012 in which plaintiff referred to an alternate personality within himself known as "Al" which "loved" the mass shooting at Sandy Hook); *id.* at 447-48 (treatment notes from 12/18/2012 indicating that "[i]n recent sessions" plaintiff had been "continuously communicating the potential he has for violence and also threatening future violence if he does not get satisfaction from the benefit claim process."); *id.* at 450 (treatment notes from 12/13/2012 stating that alter-ego "Al" is described as a gorilla and that it "likes to kill people."). While plaintiff makes much of his December 2013 "hospitalization," he was never actually admitted to the hospital. His medical records indicate

6

that "[a]fter agreeing to go to the hospital [plaintiff] sat in the waiting room for about 10 minutes then his girlfriend had to go pick up her kids so she took him home." *Id.* at 339. The court concludes that plaintiff's case is not one where his alleged disability was caused by a single, discrete event and the ALJ did not err in considering medical evidence that predated the amended onset date.

Having so concluded, the court also finds that the ALJ's credibility findings should be upheld. The hearing decision notes that plaintiff had stopped taking his psychotropic medications months before the alleged onset date. *Id.* at 30. The treatment records specifically state that plaintiff had self-discontinued his psychotropic prescription and had, instead, taken to smoking marijuana "every 20 to 40 minutes in order to maintain the effect." *Id.* at 340. And both treatment records and the opinion of state agency consultant Weiss indicate that plaintiff's symptoms were fairly controlled when he was compliant with his medication. *Id.* at 99, 301-302 (treatment notes from 3/5/2014 indicating that "anger is lees (sic) on quetiapine; no longer hallucinating . . . ."). The law is clear that an ALJ may consider such evidence in weighing credibility. *See* 20 C.F.R. § 416.929(c)(3) (treatments or other methods used to alleviate symptoms is "an important indicator of the intensity and persistence of your symptoms"); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (ALJ appropriately considers an unexplained or inadequately explained failure to follow a prescribed course of treatment); *see also* SSR 96-7p, 1996 SSR LEXIS 4 ("the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure.")[2]

The ALJ also relied on plaintiff's ability to manage bands during March and April of 2013 in assessing the severity of his symptoms. AR at 30. Plaintiff argues that this was error because these activities preceded his alleged onset date. ECF No. 19 at 16. As noted above, the ALJ

---

[2] "SSRs reflect the official interpretation of the [SSA] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009).

properly considered evidence which predated December 27, 2013. Plaintiff also argues that this evidence actually cuts in his favor insofar as he stopped managing bands because doing so caused "too much anxiety for [his] situation." *Id.* The Ninth Circuit has held, however, that "[e]ven where . . . [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). It may be that plaintiff's band management enterprise caused him substantial anxiety, perhaps too much anxiety to continue in that specific undertaking. Nevertheless, the ALJ could reasonably interpret plaintiff's participation in that activity – at a time when he undisputedly suffered from mental health issues - as evidence that he did not suffer from a totally debilitating impairment.[3] In reaching this determination the court notes that there is no requirement that the ALJ's interpretation of the evidence be the *only* reasonable one. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion."); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) ("We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.").

Some of the ALJ's other rationales for discounting plaintiff's credibility are less convincing. For instance, it agrees with plaintiff that his plans for moving to Hawaii – plans his provider deemed unrealistic – are of minimal value in determining his credibility. So too the ALJ's emphasis on plaintiff visiting the gym four times a week. Unlike his work managing bands, these activities do not obviously or necessarily speak to the intensity or limiting effects of

---

[3] A case note from plaintiff's social worker, dated March 15, 2013, states that plaintiff:

> Stays active with his business and is making future plans. Is now managing 4 local bands and showed this SW his business cards and event flyers his media production business is managing. Veteran was upbeat talking about his upcoming venues. Appears to be active socially on the weekends as he described going to all the events he helps to coordinate as well as other (sic) in hopes the local bands will sign with him. He described staying out almost the entire night this coming Friday so that he could see several bands play.

AR at 432-33.

his mental health symptoms. Nevertheless, consideration of these factors was net error and was ultimately harmless in any event in light of the stronger evidence detailed *supra*. *See, e.g., Carmickle*, 533 F.3d at 1162-63 (ALJ's reliance on two unsupported reasons was harmless error where the adverse credibility determination was otherwise supported by legally sufficient reasons).

### B. Evaluation of Medical Opinions

The ALJ accorded minimal evidentiary weight to the assessments of plaintiff's mental functioning provided by Drs. Cottrell and Chard. AR at 31. He noted that the assessments – provided on September 10, 2014 and September 23, 2014 respectively – were completed approximately nine months after plaintiff's date last insured. *Id.* The ALJ also emphasized that neither Cottrell nor Chard addressed plaintiff's ability to manage four bands. *Id.* In the same vein, the ALJ stated that the physicians' own treatment records did "not support such extreme assessments." *Id.* By contrast, the ALJ accorded substantial evidentiary weight to the opinions of State agency consultants Colsky and Weiss. *Id.*

Where an ALJ discounts a treating physician's opinion in favor of an examining or consulting physician, he is required to provide "specific and legitimate" reasons for doing so.[4] *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). The ALJ met this standard here. First, it is permissible for the ALJ to give less weight to retrospective opinions. Plaintiff argues that the Ninth Circuit has held otherwise, but the relevant case law establishes only that retrospective opinions should not be disregarded *solely* because they are retrospective. *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988). It is still permissible for an ALJ to assign them less weight on this basis. *See Johnson v. Shalala*, 60 F.3d 1428, 1432-33 (9th Cir. 1995). Second, the ALJ persuasively emphasized the inconsistency between plaintiff's band management activities and the limitations articulated by his treating physicians. *See, e.g., Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 601-02 (9th Cir. 1999) (holding that inconsistency with daily activities is a specific and legitimate reason to discount treating-source

---

[4] In his motion, plaintiff mistakenly asserts that the ALJ was required to provide "clear and convincing" reasons for rejecting his treating physicians' opinions. ECF No. 19 at 18-19.

opinion). It is, for instance, difficult to conceive of how an individual whom both treating physicians described as having "poor/none" ability to deal with the public (AR at 565, 567) could, as plaintiff's social worker related (*see supra*, n.3), be socially active on weekends and undertake to convince bands that he was the best choice to represent them. It is similarly difficult to envision such a person successfully organizing a benefit concert, as plaintiff undisputedly did. AR at 426, 440.[5] Finally, the Ninth Circuit has "consistently upheld the Commissioner's rejection of the opinion of a treating or examining physician, based *in part* on the testimony of a nontreating, nonexamining medical advisor." *Morgan*, 169 F.3d at 602 (emphasis in original).

Based on the foregoing and taking these justifications together, the court finds that the ALJ offered specific and legitimate reasons for discounting the opinions of Drs. Cottrell and Chard.

## CONCLUSION

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 19) is DENIED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 20) is GRANTED; and

3. The Clerk is directed to enter judgment in the Commissioner's favor.

DATED: August 15, 2018.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

[5] Plaintiff does argue that the ALJ failed to offer record support for his statement that the treating physicians' "own records do not support such extreme assessments." ECF No. 19 at 19. The court interprets this statement as referring to the discrepancy between plaintiff's band representation business – a subject which came up several times in his psychiatric treatment records – and the September 2014 mental functioning assessments. The ALJ had referenced and cited sources for plaintiff's band management earlier in the decision (AR at 30) and there was no requirement that he restate those citations in his rejection of the treating physicians' opinions. *See Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record . . . ").